62 Wn.2d 515 (1963)
383 P.2d 889
In the Matter of the Application for a Writ of Habeas Corpus of FLOYD W. PETTIT, Respondent,
v.
B.J. RHAY, as Superintendent of the State Penitentiary, Appellant.[*]
No. 36914.
The Supreme Court of Washington, Department Two.
July 11, 1963.
The Attorney General and Basil L. Badley, Assistant, for appellant.
Irving C. Paul, Jr., for respondent.
DONWORTH, J.
This is an appeal by the superintendent of the Washington State Penitentiary at Walla Walla from an order of the Superior Court of Walla Walla County directing the discharge of respondent, Floyd W. Pettit, from the superintendent's custody. The order was entered after a hearing on respondent's petition for a writ of habeas corpus.
There is no dispute as to the facts in this case. Since the unchallenged findings of fact entered by the superior court concisely set forth the circumstances upon which the court's order is predicated, they are set forth below in full:
"I. That Petitioner is presently confined in Washington State Penitentiary, Walla Walla, Washington, pursuant to judgment and sentence entered in King County Cause No. 34353 on November 4, 1960, wherein the said Petitioner was adjudged guilty of the crime of rape.[[1]]
"II. That on March 28, 1960, the Petitioner was taken before the Honorable John Croome, Justice of the Peace, in and for the County of King, State of Washington, acting as a committing magistrate for a preliminary hearing on an accusation of rape involving a fifteen-year old girl. Upon learning the nature of the proceedings and the charge, the accused demanded counsel. Upon denial of his demand, the accused then advised the Court that he had only a second or third grade education, that he was twenty-six years of *517 age, and had been at one time confined as a psychopathic in Eastern State Hospital for a period of approximately five years. The Court still refused to grant the request for counsel.
"The preliminary hearing was started by the fifteen-year-old girl taking the witness stand and testifying under oath, that this particular accused, the Petitioner herein, was the individual who had committed the offense against her. Following the girl's testimony, Judge Croome asked the accused if he desired to cross examine the witness. The Petitioner informed the Judge that he did not know how to cross-examine and needed a lawyer for this purpose.
"III. Subsequent to the preliminary hearing Judge Croome formerly [sic] bound the Petitioner over for trial in the Superior Court upon the charge of rape of the said fifteen-year-old girl. An information was thereupon filed in the King County Superior Court under Cause No. 34353 charging the crime of rape.
"IV. Prior to the time of trial in King County Superior Court the complaining witness who had previously testified before Judge Croome died. Her death was not caused or contributed to by the alleged acts of Petitioner.
"V. Some time after Petitioner's arrest in regard to the charge of rape he made a confession which he now claims to have been obtained by duress and fraud.
"VI. Prior to arraignment in King County Superior Court under Cause No. 34353, Counsel was appointed to represent Petitioner and said Counsel did in fact represent Petitioner at the trial.
"VII. At the trial, over the objection of the Defendant, Helen Griggs, Clerk of the Justice Court of the Honorable John Croome and Norman Quinn an Assistant Prosecutor were permitted to relate from memory the girl's testimony given at the preliminary hearing. In objecting to the admission of this testimony Counsel for Petitioner advised the Court that the admission of such testimony would deprive Petitioner of his Constitutional Right to be accorded due process of law in that there would be failure to provide Counsel to Petitioner at all stages of the proceeding and that he would be denied the right to confront the accusing witness and would be denied the right of full and complete cross examine [sic] by an attorney and that the right accorded to the Petitioner to cross examine the complaining witness in Justice Court was of no value to Petitioner because of his lack of education and prior mental history."
*518 Based upon the above findings of fact, the superior court concluded that respondent had been denied (1) due process of law, (2) the right to confront the witnesses against him, and (3) the right to counsel. Error is assigned to these conclusions of law.
[1] By presenting these issues in a habeas corpus proceeding rather than on appeal from the judgment of conviction, the initial inquiry is: can the petitioner (respondent herein) raise any of these constitutional issues in seeking to obtain the relief prayed for.
"A writ of habeas corpus is available only for the purpose of inquiring into the legality of the petitioner's restraint, and to determine whether his constitutional right to due process of law has been violated...." In re Allen v. Rhay, 52 Wn. (2d) 609, 328 P. (2d) 367, cert. den. 358 U.S. 900, 3 L.Ed. (2d) 150, 79 S.Ct. 227 (1958).
Under the provisions of RCW 7.36.130 (1), the legality of any judgment or process whereby a person is in custody may be inquired into by the courts only where it is alleged in the petition for the writ that rights guaranteed the petitioner by the constitution of the state of Washington or of the United States have been violated. Even though there may be a constitutional violation connected in some manner with a petitioner's conviction, it is not ground for relief in a habeas corpus proceeding unless it can be said to result in a denial of due process. In the instant case, what occurred at the preliminary hearing became relevant only when the state offered in evidence at the trial the "testimony" of the complaining witness at the preliminary hearing. This "testimony" consisted of the recollections of the assistant prosecutor and of the clerk of the justice court (who were present when the complaining witness testified at the preliminary hearing) as to the substance of her testimony, and did not purport to be a verbatim recitation thereof.
[2] The introduction of this evidence was objected to at the trial in the King County Superior Court, and the question of its admissibility was thereby presented to the court and the petitioner's objection was overruled. The only way to challenge the trial court's ruling on the admissibility *519 of this evidence was by appeal to this court from petitioner's judgment and sentence and not by application for a writ of habeas corpus. In re Braun v. Belnap, 51 Wn. (2d) 892, 316 P. (2d) 472 (1957). Nor is this general rule changed because the original objection to the evidence had its basis in the constitution. In re Mason v. Cranor, 42 Wn. (2d) 610, 257 P. (2d) 211 (1953), cert. den. 346 U.S. 901, 98 L.Ed. 401, 74 S.Ct. 229. However, we are required by RCW 7.36.140, in cases where any federal question is raised in the pleadings, to determine whether the petitioner has been denied a right guaranteed by the Constitution of the United States. Therefore, we consider the constitutional questions of the right to confrontation and the right to counsel only within the framework of the broader question of whether the admission of the evidence in the superior court as to the testimony given by the prosecuting witness at the preliminary hearing resulted in a denial of due process of law.[2]
Under the provision of Const. Art. 1, § 22 (amendment 10), the accused is given the right to confront the witnesses against him.
"In criminal prosecutions the accused shall have the right ... to meet the witnesses against him face to face, ..."
The right of confrontation is also guaranteed the accused in federal criminal proceedings under the provisions of the sixth amendment to the United States Constitution; however, no case has been brought to our attention where this federal right has been carried over to the states by reason of the Fourteenth Amendment.[3] The purpose of the state *520 and federal constitutional provisions pertaining to the right of confrontation appear to be the same in any event.
[3] To reproduce the testimony of a witness given at a former trial does not violate the constitutional rights of the accused if certain conditions have first been met. In State v. Ortego, 22 Wn. (2d) 552, 556, 157 P. (2d) 320, 159 A.L.R. 1232 (1945), we said:
"With respect to the protection afforded by the provisions of state constitutions containing language identical with, or equivalent to, that appearing in the Washington constitution, there is practically a unanimity in the judicial decisions in this country to the effect that, however expressed, the constitutional right of an accused person to confront the witnesses against him is not infringed by the reproduction of the testimony given by those witnesses at a former trial at which the accused was present and accorded the opportunity for cross-examination, when such witnesses are not available at the subsequent trial." (Italics ours.)
Although the Ortego case and other cases from this jurisdiction cited therein have dealt with the reproduction of testimony produced at a former trial, the rule is the same with respect to testimony produced at a preliminary hearing. State v. Head, 91 Ariz. 246, 371 P. (2d) 599 (1962); State v. Bonskowski, 180 Kan. 726, 308 P. (2d) 168 (1957); Hamilton v. State, 95 Okla. Crim. 262, 244 P. (2d) 328 (1952).
In State v. Ortego, supra, it was held, also, that the testimony given by three witnesses at the trial before a justice of the peace could be proved by the parol testimony of the justice of the peace at the trial in the superior court on appeal from the justice court conviction.
[4] It is apparent that the effect of the inability of respondent to cross-examine the complaining witness at the preliminary hearing, because of his lack of education and his 5-year incarceration in a mental institution, is the crucial point upon which this case must turn. It has been said that, to meet the constitutional requirement of confrontation,
"... It is sufficient if one accused of having committed a crime has been once confronted by the witnesses against him in any stage of the proceedings upon the same *521 accusation and has had an opportunity of a cross-examination by himself or by counsel in his behalf...." People v. Gilhooley, 108 App. Div. 234, 95 N.Y. 636, 19 N.Y. Crim. Rep. 541, affirmed 187 N.Y. 551, 80 N.E. 1116 (1905).
In Mattox v. United States, 156 U.S. 237, 244, 39 L.Ed. 409, 15 S.Ct. 337 (1895), the court said:
"The substance of the constitutional protection is preserved to the prisoner in the advantage he has once had of seeing the witness face to face, and of subjecting him to the ordeal of a cross-examination...."
This statement was quoted with approval in State v. Cushing, 17 Wash. 544, 50 Pac. 512 (1897), and was thereafter referred to by reference to its quotation in State v. Cushing, in State v. Waite, 141 Wash. 429, 251 Pac. 855 (1926), and State v. Ortego, supra. In Brown v. United States, 234 F. (2d) 140, 144 (1956), the court said, "The essential purpose of confrontation is cross-examination."
Did respondent here have an opportunity to cross-examine the complaining witness and thus be accorded his constitutional right to confrontation? If so, then the right of an accused to confront the witnesses against him is a shallow right indeed.
[5, 6] In the case at bar, the opportunity afforded respondent to cross-examine the complaining witness at the preliminary hearing was, for all practical purposes, nonexistent, since (as he told the justice of the peace) he was not competent to conduct a cross-examination because of his extremely limited education and past mental illness. Respondent, recognizing his inability to cross-examine, requested counsel for that purpose; this request was denied. An opportunity to cross-examine must be real and not fanciful. It must be a meaningful opportunity and not a mere matter of form to be extended without regard to whether it can be exercised by the accused. The conclusion we reach is that respondent, because of his mental inability to cross-examine the complaining witness, and the refusal of the justice of the peace to comply with his request for counsel for that purpose, was denied the right to confront the witnesses against him.
*522 We do not wish to be understood as holding that every indigent person normally has a right to court-appointed counsel at a preliminary hearing. We hold only that, under the peculiar facts before us, the denial of counsel at the preliminary hearing in this case prevented respondent from being able to confront the witnesses against him.
A somewhat analogous situation was presented in White v. Maryland, 373 U.S. 59, 10 L.Ed. (2d) 193, 83 S.Ct. 1050 (1963). At a preliminary hearing defendant, while not represented by counsel, entered a plea of guilty. Subsequently, at a formal arraignment, the defendant, who was then represented by court-appointed counsel, entered pleas of not guilty and not guilty by reason of insanity. During the defendant's trial, the guilty plea made at the preliminary hearing was introduced into evidence. The defendant did not object to the introduction of this evidence at the trial. He was convicted, and the Maryland Court of Appeals affirmed. The United States Supreme Court reversed the conviction. The court answered the state's contention that there was no right to court-appointed counsel at a preliminary hearing by saying:
"Whatever may be the normal function of the `preliminary hearing' under Maryland law, it was in this case as `critical' a stage as arraignment under Alabama law. For petitioner entered a plea before the magistrate and that plea was taken at a time when he had no counsel."
(In Hamilton v. Alabama, 368 U.S. 52, 7 L.Ed. (2d) 114, 82 S.Ct. 157 (1961), the court held that, in Alabama, arraignment is "a critical stage in a criminal proceeding," at which time a defendant has a right to counsel.)
[7] The question before us is: Did the denial of the right to confront the complaining witness result in a denial of due process when evidence of her testimony at the preliminary hearing was admitted at the trial? We are compelled to conclude that it did. It was only through cross-examination that the conscience of the complaining witness could have been probed and her memory and reliability tested. Evidence of the testimony given by the complaining witness at the preliminary hearing was essential to the *523 state's case to establish the corpus delicti of the alleged crime, its perpetrator, and the victim.
"There are two principal facts necessary to be proven beyond a reasonable doubt in order to convict appellant of this crime; first, that he had sexual intercourse with the prosecuting witness; and second, that it was against her will and by forcibly overcoming her resistance thereto...." State v. Raymond, 69 Wash. 98, 103, 124 Pac. 495 (1912).
The only evidence before the jury in the superior court as to these vital matters consisted of two bystanders' versions of the complaining witness' uncross-examined testimony concerning the essential elements of the crime of forcible rape as defined in RCW 9.79.010.
The essential unfairness flowing from even hindrances to an effective cross-examination was discussed in a recent decision of this court, State v. Swenson, ante p. 259, 382 P. (2d) 614 (1963).
In the case at bar, no meaningful cross-examination of the complaining witness could be made at all, and this was through no fault of the accused. To convict the accused and sentence him to a maximum term of 20 years' confinement in the state penitentiary upon the uncross-examined testimony of a 15-year-old girl is to deprive him of that fundamental fairness in the conduct of his trial which is guaranteed him by the applicable provisions of both the state and federal constitutions.
Since respondent was denied due process of law in violation of these constitutional mandates, the order granting the writ of habeas corpus in this proceeding is affirmed.
OTT, C.J., FINLEY, WEAVER, and HAMILTON, JJ., concur.
NOTES
[*] Reported in 383 P. (2d) 889.
[1] Forcible rape.
[2] The United States Supreme Court has recently held that the failure of a person convicted of a felony in a state court to exhaust his state remedies (such as an appeal to a court of last resort) does not necessarily justify withholding federal habeas corpus relief. Fay v. Noia, 371 U.S. 1055, 9 L.Ed. (2d) 837, 83 S.Ct. 822 (1963).
[3] We note, however, that the right to counsel, also provided for within the Sixth Amendment, now does apply to the states. Gideon v. Wainwright, 372 U.S. 335, 9 L.Ed. (2d) 799, 83 S.Ct. 792 (1963), overruling Betts v. Brady, 316 U.S. 455, 86 L.Ed. 1595, 62 S.Ct. 1252 (1942).