[No. 22960. Department Two. March 23, 1931.]

THE STATE OF WASHINGTON, *Respondent*, v. JAKE HARDUNG, *Appellant*.[1]

*F. M. Curtiss*, for appellant.
*Joseph H. Johnston*, for respondent.

FULLERTON, J.—The appellant, Hardung, was informed against, jointly with one Sam Derr, for the

[1]Reported in 297 Pac. 167.

crime of arson in the second degree. In the information, Derr was charged with the commission of the overt act constituting the crime, and the appellant was charged with having counseled, aided and abetted therein. Derr pleaded guilty to the offense, and was sentenced on his plea of guilty. The appellant pleaded not guilty, and was found guilty by the verdict of the jury. The appeal before us is from the judgment and sentence pronounced upon the verdict.

The building which the defendants were accused of burning was a grain elevator, owned by the appellant. It was unoccupied at the time it was burned, was not in use for the purposes for which it had been constructed, and seemingly it had not been so used for a number of years. It had been partially dismantled after the appellant had obtained title to it, and some of the fixtures taken from it were found in the possession of the appellant at his home. The building was insured in a sum grossly exceeding its actual value, and the building and the land upon which it was situated were mortgaged to their full value.

The appellant's connection with the transaction rests principally on the testimony of Derr. Indeed, there was but little of circumstance shown or of direct evidence introduced which tended to corroborate him. But, after a careful reading of his testimony, we are impressed, as the jury and the trial judge must have been impressed, with its evident truth.

He was, it is true, an accomplice, and it is true, also, that the testimony of an accomplice must be viewed with caution, but, in this jurisdiction, a defendant may be lawfully convicted of a crime on the testimony of an accomplice. Often, this is the only character of evidence that the state can produce, and, if the rule were otherwise, many criminals would go unpunished.

It would have been so in this instance. The crime was carefully planned. No third person was taken into the confidence of the conspirators. The plans were such as would ordinarily leave no trace of the perpetrators. But fortunately or unfortunately, owing to the point of view, the plans miscarried in part. Gasolene was used to insure a quick burning of the building, and this, when ignited, exploded, burning Derr severely, and causing an inquiry which led to a discovery of the cause of the fire.

The defense of the appellant was conducted by an able and experienced attorney. His cross-examination of Derr was subtle and masterly. In it, he laid bare to the jury Derr's somewhat dissolute life, and all of his petty delinquencies, but his story as to the principal event was not shaken. We cannot, therefore, follow the appellant in his contention that the trial court should have taken the case from the jury.

After the return of the verdict, the appellant moved for a new trial, basing the motion on the ground that Derr was of unsound mind, and incompetent to testify as a witness in the cause. The motion was supported by the affidavits of some seven persons, who gave it as their opinion that Derr was incompetent to testify, for the reason stated in the motion.

But it is our conclusion that the motion was rightly denied. While it is true we have a statute which declares that a person of unsound mind is not competent to testify (Rem. Comp. Stat., § 1213), the statute itself offers no definition of the term "unsound mind." Nevertheless, we think it must include those persons only who are commonly called insane; that is to say, those suffering from some derangement of the mind rendering them incapable of distinguishing right from wrong. It cannot include within its terms the mere ignorant or uneducated, nor those who are incapable

of receiving all of the impressions within the comprehension of those more commonly gifted. In other words, the statutory term refers to those who are without comprehension at all, not to those whose comprehension is merely limited.

The affidavits filed were refuted by counter-affidavits, and the fact that no insanity charge was ever preferred against Derr, although he had lived his whole life in the vicinity of the crime, is some evidence which tends to refute the charge made against him. It is of interest to note, also, that five of the persons who made affidavits as to the insanity of Derr were witnesses for the defendant at the trial. They based the fact of insanity, not upon his conduct at the trial, but upon their long prior acquaintance with him, yet none of them, in their testimony, even made a suggestion that the witness was, or might be, of unsound mind.

But the record itself in this instance absolutely refutes the charge that the witness was of unsound mind. It may disclose that he was uneducated, and it may show that he was easily persuaded to commit crime, but it clearly shows that he understood the criminality involved in the act he committed, and further shows that he was capable of giving a clear statement of the facts leading up to, and which induced, the crime, and a clear statement of the manner of its commission.

The appellant was represented at the trial by two attorneys. One of these left the court room immediately after the arguments to the jury were concluded. The other one complained of illness after the jury retired, and asked the court to be excused from further attendance. It was thereupon stipulated that the verdict of the jury might be received by the court in the absence of counsel. The verdict was so received and recorded according to the usual formalities, ex-

cept, perhaps, that the jury was not polled, the defendant being present without counsel. It is urged that this was error. It is contended that the defendant is entitled to counsel at every stage of the proceeding, and that this is a right he could not waive.

But the contention mistakes the rule. In this state, a defendant may conduct his entire defense without counsel if he so chooses, and, obviously, it would seem, he can dispense with his counsel at any stage of the trial. In felony cases, it has been held that the accused has the right to be present when the verdict is received, and that it is error to receive the verdict in his absence, but the courts hold that even this right may be waived: *State v. Way,* 76 Kan. 928, 93 Pac. 159; *Frey v. Calhoun Circuit Judge,* 107 Mich. 130, 64 N. W. 1047; *Sahlinger v. People,* 102 Ill. 241; *Commonwealth v. McCarthy,* 163 Mass. 458, 40 N. E. 766. However, no case to which our attention has been called holds that a defendant may not consent to receive the verdict of the jury in the absence of his counsel. See to the contrary, *Barnard v. State,* 88 Wis. 656, 60 N. W. 1058.

The judgment is affirmed.

TOLMAN, C. J., BEALS, MILLARD, and BEELER, JJ., concur.