[No. 46646.   En Banc.   December 18, 1980.]

THE STATE OF WASHINGTON, *Respondent,* v. ROBERT
W. ALLEN, *Appellant,* GREGORY LAMONT
CASTERLOW, *Petitioner.*

*Gregory L. Lewis, Sinnitt, Teitge, Sinnitt, Inc., P.S.,* and
*Carl D. Teitge,* for petitioner.

*Don Herron, Prosecuting Attorney,* and *Michael R.
Johnson, Deputy,* for respondent.

STAFFORD, J.—Gregory Casterlow and codefendant Robert Allen were convicted of first degree robbery and first degree kidnapping. The convictions were affirmed in an unpublished opinion by the Court of Appeals. Casterlow's petition for review was granted. We affirm the Court of Appeals.

At approximately 3 a.m. on August 19, 1977, Daniel Rodriguez, a Stop–and–Go Store employee, was sweeping doormats in front of the store. No customers were present at the time. Defendants stopped their automobile in front of the store and the passenger asked Rodriguez to come to the car. As he approached the car, the passenger pointed a rifle at him, told him it was a "holdup" and directed him to get into the back seat. Rodriguez complied. Upon his entering the car the passenger asked Rodriguez how to operate the store's cash register and received instructions. Thereafter, the passenger gave his rifle to the driver and went into the unoccupied store.

The driver ordered Rodriguez to lie down with his face toward the back so they could not be observed. He threatened Rodriguez with the comment that "if [he] hadn't told him exactly how to operate, [he] would be going all the way with them." The passenger returned in one or two minutes, demanded further instructions as to the operation of the cash register and thereafter returned to the store. Subsequently, the passenger returned to the car with the cash register drawer, placed it on the front seat and again took possession of the rifle. The passenger pointed the rifle at Rodriguez, telling him to keep his face down and added that they were going to take him on a small trip. Thereafter they drove approximately two blocks to a side street, drove down another block and stopped. Rodriguez was told to get out, start running back to the store and not to look back. Rodriguez did as he was told.

Shortly thereafter defendants Casterlow and Allen were arrested and each was charged with one count of first degree robbery and a second count of first degree kidnapping. A jury convicted each defendant on both counts. After

an unsuccessful appeal to the Court of Appeals, this court was petitioned for review of the following issues: (1) failure of the trial court to dismiss the kidnapping charge; (2) failure of the trial court to give defendants' supplemental instruction No. 2; and (3) preservation of witness Rodriguez' testimony on video tape later shown to the jury.

## I

*Whether the trial court erred in refusing to dismiss the first degree kidnapping charge.*

Petitioner argues that the trial court should have dismissed the first degree kidnapping charge (hereinafter kidnapping) asserting the elements of proof that would support a conviction under RCW 9A.40.010 and .020 are the same as those which would constitute first degree robbery (hereinafter robbery) under RCW 9A.56.190 and .200. It is urged that, at best, the kidnapping was only incidental to the robbery and thus the kidnapping charge was duplicitous. We do not agree with the contention and affirm the Court of Appeals.

RCW 9A.56.190 and .200 define robbery as follows:

9A.56.190 . . . A person commits robbery when he unlawfully takes personal property from the person of another or in his presence against his will by the use or threatened use of immediate force, violence, or fear of injury to that person or his property or the person or property of anyone. Such force or fear must be used to obtain or retain possession of the property, or to prevent or overcome resistance to the taking; in either of which cases the degree of force is immaterial.

9A.56.200 . . . (1) A person is guilty of robbery in the first degree if in the commission of a robbery or of immediate flight therefrom, he:

(a) Is armed with a deadly weapon; or

(b) Displays what appears to be a firearm or other deadly weapon; or

(c) Inflicts bodily injury.

RCW 9A.40.020 and .010 define kidnapping as follows:

Kidnaping in the first degree. (1) A person is guilty of kidnaping in the first degree if he intentionally *abducts* another person with intent:

. . .

(b) *To facilitate commission* of any felony *or flight* thereafter . . .

(Italics ours.)

9A.40.010 Definitions. The following definitions apply in this chapter:

(1) *"Restrain"* means to restrict a person's movements without consent and without legal authority in a manner which interferes substantially with his liberty. Restraint is "without consent" if it is accomplished by (a) physical force, intimidation, or deception, . . .

(2) *"Abduct"* means to restrain a person by either (a) secreting or holding him in a place where he is not likely to be found, or (b) using or threatening to use deadly force . . .

(Italics ours.)

A review of the foregoing statutes makes it clear robbery and kidnapping require different elements of proof.

As applied to the facts of this case, robbery requires (1) a taking of personal property, (2) from the person or in one's presence, (3) by the use or threatened use of force, or violence or fear of injury, (4) such force or fear being used to obtain or retain the property, (5) while armed or displaying a deadly weapon. On the other hand, as applied to the facts of this case, kidnapping involves an abduction to facilitate a subsequent flight from the commission of a felony, said abduction involving: (1) a restriction of a person's movement, (2) without consent, by (3) secreting or holding the victim in a place where he is not likely to be found, or by (4) using or threatening to use deadly force.

In the instant robbery the force or fear was employed to obtain personal property (*i.e.,* the money) from Rodriguez. In the subsequent kidnapping the force was used to abduct the victim by secreting him in a place where he was not likely to be found (*i.e.,* lying flat in the back seat of a car) or to facilitate the flight from the scene

of the robbery, thus unlawfully restraining or restricting the victim's movement by physical force or intimidation.

Once the money had been obtained by force, the robbery was completed. Any incidental abduction or restraint occurring during this short period of time would merge into the robbery as a matter of law. *State v. Johnson,* 92 Wn.2d 671, 676, 600 P.2d 1249 (1979). "[T]he mere *incidental* restraint and movement of a victim which might occur during the course of a [crime] are not, standing alone, indicia of a true kidnapping." *State v. Green,* 94 Wn.2d 216, 227, 616 P.2d 628 (1980). A kidnapping which occurred thereafter would be a wholly separate event, however. Neither the flight from the scene of the robbery nor the means of flight therefrom was statutorily or logically a part of the robbery. We are aware of no case which supports the unique theory that a felon is entitled, as a part of the criminal act, to escape from the scene of the crime. Most certainly it is not an element of the crime of robbery. Thus, the kidnapping involved in the instant case was not incidental to, a part of, or coexistent with the robbery. The first crime (robbery) had come to an end before the second crime (kidnapping) began.

We do not hold that under other facts a kidnapping may not be incidental to or merged with robbery or some other felony.[1] We hold only that under the facts of this case the kidnapping and the robbery occurred as separate events, albeit close in time, and that the subsequent kidnapping was neither incidental to nor merged with the robbery.

We hold the trial court did not err by refusing to dismiss the kidnapping charge.

---

[1]*See State v. Johnson,* 92 Wn.2d 671, 600 P.2d 1249 (1979), kidnapping merged with rape in the first degree in a situation where the kidnapping did not have an independent purpose or effect. In other words, the force employed in the kidnapping was the same as that which would support the charge of rape. The injury to the victim did not have a separate and distinct existence from and was merely incidental to the crime of which it formed an element. *See also State v. Green,* 94 Wn.2d 216, 616 P.2d 628 (1980).

## II
*Whether the trial court erred by refusing to give petitioner's supplemental proposed instruction No. 2.*

Petitioner contends the trial court erred by failing to give his supplemental proposed instruction No. 2 which reads:

Any restraint or abduction that is an integral part of another crime, and is [merely] incidental to the other crime, is insufficient to support a conviction of kidnapping in the first degree.

It is urged the requested instruction should have been given because whether the existent restraint or abduction (essential to kidnapping) was incidental to the robbery is a jury question. We do not agree and affirm the Court of Appeals.

We recognize an instruction on the theory of "merger" would be proper in some cases.[2] It is not proper, however, to instruct on an issue or theory of law which is not supported by the evidence. *State v. Piche,* 71 Wn.2d 583, 588, 430 P.2d 522 (1967). As previously indicated under the facts of this case, there was no merger of the subsequent kidnapping as a matter of law.

As we indicated above, there is no evidence in the record other than that the robbery had been committed and completed before the kidnapping took place. The abduction was not merely incidental to the robbery, but was separate and distinct therefrom. The facts of this case fall squarely within the language of RCW 9A.40.020 and .010(1), (2) quoted above. Consequently, it was not error to have refused an instruction on the theory of "merger".

## III
*Whether the trial court erred in allowing the testimony of witness Rodriguez to be preserved on video tape and presented to the jury.*

---

[2]An instruction directing the jury to consider only acts occurring after the robbery was completed, in deciding on the kidnapping charge, may be proper in similar cases. We do not decide this issue, however, because such an instruction was neither offered nor argued.

Petitioner does not challenge the general proposition that deposition may be taken by means of video tape for use in criminal cases. This mode of procedure is authorized by CrR 4.6(a), (c) and CR 30(b)(4). *State v. Hewett*, 86 Wn.2d 487, 491, 545 P.2d 1201 (1976). He protests the use of a video tape in this case, however, by asserting the State failed to establish that witness Rodriguez would be unavailable for trial as required by CrR 4.6(d).

Prior to authorizing use of a video tape deposition the trial was scheduled for October 5, 1977 (later continued to November 21, 1977). It was also established that witness Rodriguez had received a second lieutenant commission and had been ordered by the Army to report for active duty at Fort Sill, Oklahoma, on September 30, 1977.

The trial court concluded there was a sound and legitimate reason for the witness being out of the jurisdiction at the time of trial and made the following findings of fact to which no error was assigned.

1. Daniel C. Rodriguez is a necessary and material witness in this cause, being the victim.

2. Daniel C. Rodriguez will be unavailable at time of trial due to duty with the United States Army, alteration of which would disrupt his military career.

3. The interest of justice will best be served by preserving the testimony of Daniel C. Rodriguez on tape.

■ Petitioner argues that the foregoing was an insufficient showing that the witness could not be in attendance at trial. There was, he contends, no showing of an attempt to have the orders changed. While it is true there was no apparent attempt to have the Army change its orders for the convenience of the court, the record is clear that any delay in reporting for active duty would have caused witness Rodriguez a substantial setback in his Army career, including a 3- to 5-month delay in his specialized training and would have been a detriment to his elevation in rank.

The question of "unavailability to testify at trial" is one of fact to be determined by the trial judge. We hold the trial court correctly resolved the issue of availability. A

witness (victim) under Army orders to be in another state at the time of trial clearly falls within the ambit of CrR 4.6(d). *Cf. State v. Hewett, supra* (complaining witness, a ship's officer scheduled to sail for Japan the day after the crime and who was at sea the day of trial, found unavailable); *State v. Firven,* 22 Wn. App. 703, 591 P.2d 869 (1979) (complaining witnesses, Navy seamen scheduled to ship out prior to trial, found unavailable); *see also State v. Roebuck,* 75 Wn.2d 67, 448 P.2d 934 (1968) (complaining witness who became incompetent after his testimony was taken at a preliminary hearing found unavailable).

The Court of Appeals is affirmed.

UTTER, C.J., and ROSELLINI, BRACHTENBACH, HOROWITZ, DOLLIVER, HICKS, and WILLIAMS, JJ., concur.